INTERSTATE MOTOR FREIGHT CO. *v.* GIRARD.

(Decided February 6, 1928.)

*Mr. Charles T. Rich,* for plaintiff in error.
*Messrs. Wertz & Breitenstein,* for defendant in error.

SULLIVAN, P. J. This cause is here on error from the court of common pleas of Cuyahoga county, wherein a judgment was recovered in the sum of $5,000, reduced on account of its being excessive to the sum of $3,500. The cause of action was one for personal injuries. The parties stood in the inverse order in the court below, but will be referred to hereinafter as plaintiff and defendant.

The plaintiff, Charles Girard, on the 10th of September, 1925, at about 2:15 p. m., as an employee of the Green Cab Company, was driving a taxicab, in the performance of his duties, in an easterly direction on Euclid avenue in the city of Cleveland, and, upon reaching what is known as Lee road, which enters Euclid avenue from the south, he stopped his machine, for the reason that it was the regular stopping place of a street car and its trailer, which were

then and there discharging their passengers, and to thus stop is a duty imposed by the ordinance of the city of East Cleveland. In due time, and at this juncture, the street car started forward, and the taxicab also, which vehicle was beside the trailer of the street car. When Lee road was reached, and in about the middle thereof, the taxicab as well as the trailer collided with an automobile truck, which had a trailer without brakes, which was heavily loaded. This automobile truck and trailer were owned and operated by one Robert Duncan, concededly an agent of the defendant corporation.

Immediately prior to the collision, this truck and trailer of the defendant were coming down Lee road hill and toward Euclid avenue, and, while in locomotion, the brakes of the defendant's truck, both emergency and service brakes, were unable to function, notwithstanding the efforts of the operator. Just previous to the accident, Duncan had halted to allow a woman with a baby carriage to pass by, but, immediately upon attempting to restart, and prior to going down the hill, this condition of the brakes was discovered. It is conceded that there was no attempt to put his truck in first or second gear in order to have these gears operate as a brake, and thus offset the momentum of the truck and trailer in descending the hill toward the location of the taxicab driver and the street car heretofore noted.

The evidence also shows that no horn was sounded when this emergency arose, and consequently the truck and trailer of defendant were running wild. When about in the vicinity of Euclid, in the middle of Lee road, Duncan attempted to turn to the right, and, in so doing, the truck struck the taxicab of the

plaintiff, and in the meantime the trailer, under no control swung into Euclid avenue, striking the taxicab on its right side, as a result of which it was practically demolished, and the violence of the collision drove it against the trailer of the street car, throwing it from the tracks, as a result of which plaintiff was caught in the debris produced by the collision, and was severely injured, but as to the extent of this the evidence is in conflict, and the question was submitted with proper instructions to the jury.

The speed of the truck, when running wild, was in the neighborhood of 35 miles per hour, and, in examining the record so as to ascertain what the conduct of the plaintiff was preceding the catastrophe, we find that the evidence is in conflict as to whether he pursued the proper course, or, in other words, whether he exercised due and ordinary care under all the circumstances produced by the unexpected situation which arose on the highway, traceable to the faulty brakes of the defendant's truck. There is evidence tending to show that the best thing for the driver of the taxicab to do was to go ahead, on the theory that, had he halted his machine, the damage would have been more serious, and perhaps more fatal; the reason given for that being that the natural result of the driver of the truck attempting to turn on Euclid avenue was to cause the trailer of defendant's truck to swing around, thus blocking Lee road to such an extent that the driver of the cab could not pass in safety, and thus was forced to go forward, instead of stopping or slowing up. There is evidence in the record which conflicts with this, and thus a situation is created which bears upon the question of contributory negligence, and therefore

forms a basis for determination of the question whether, as a matter of law, the court below committed error in not sustaining the motion of the defendant below to direct a verdict on the ground of contributory negligence.

It is well for us to consider, in discussing the question of contributory negligence, what it really is. We quote from *East Tennessee, V. & G. Ry. Co.* v. *Hull,* 88 Tenn., 33, 12 S. W., 419:

"Contributory negligence on the part of the plaintiff is, when it proximately contributes to the infliction of the injury, a bar to an action. * * * But if the damage is not the necessary or ordinary or likely result of such contributory negligence, but is due to some wholly unlooked-for and unexpected event, which could not reasonably have been anticipated or regarded as likely to occur, such contributory negligence is too remote to be set up as a bar to the action."

Of course, it is the well-settled law in Ohio that, where a serious danger confronts one, he is not held to a nicety of judgment. He may have pursued the wrong course, determined after the end of the misfortune. His conduct is not to be viewed by looking backward in order to determine the question whether he exercised ordinary care, but, by looking forward, when the circumstances were unforeseen and the result unknown. This law is well settled, but we quote from *Baumler* v. *Narragansett Brewing Co.,* 23 R. I., 430, 50 A., 841, to sustain our contention:

"Errors in judgment on the part of a plaintiff, in trying to escape imminent danger brought about by the defendant's negligence, do not constitute contributory negligence, if the acts done were such as

ordinarily prudent persons might have been expected to do under like circumstances, even though the injury would not have happened if the acts had not been done. So, where a passenger, apprehending a collision, rushes out of the car, where he would have been safe, and goes upon the platform, where he is hurt, his act is, upon this principle, justifiable, * * * and where one, being lawfully upon a railway track when a train suddenly appears, jumps the wrong way in the excitement of the moment, it is not contributory negligence.''

That is why the authorities universally hold that, in order to determine the question whether one exercises ordinary care, the excitement, confusion, and danger of the situation must all be taken into consideration, because the exercise of ordinary care, under dangerous conditions and circumstances, is an entirely different question than it is when one whose conduct is at issue is able to exercise a judgment which is not weakened or impaired by untoward incident.

With this rule in mind, which we think is directly applicable to the case at bar, and with a record before us where there is a conflict of the evidence as to which was the proper course to pursue, we hold that the court below did not commit error in refusing to direct a verdict for defendant on the ground that there was contributory negligence as a matter of law.

If from the evidence in the case at bar there is any warrant for even an inference that the plaintiff at the time of the injury was exercising ordinary care, then contributory negligence is not a matter of law, but a question of fact to be submitted to the

jury. In the present record, even though there is a conflict in the evidence as to the conduct of the taxicab driver, no other conclusion can be reached than that there is an inference at least that the plaintiff under all the circumstances of the case did the best the circumstances allowed, or at least acted with such prudence and foresight as he was capable of under the trying circumstances which surrounded him. If, in the record, there can be found a reasonable foundation for plaintiff's conduct, even though repugnant to other testimony in the case, then it must follow that there was an inference that he acted with that prudence and foresight by which the ordinary man, under similar circumstances, is bound.

We are borne out in this analysis of the case by *McMurtrie* v. *Wheeling Traction Co.,* 107 Ohio St., 107, 140 N. E., 636, the first and second paragraphs of the syllabus of which we quote:

"Where any phase of the facts, as shown by the evidence upon the subject of contributory negligence, will warrant the inference that the plaintiff, at the time of the injury, was exercising due care, it cannot be said that plaintiff was guilty of contributory negligence, as a matter of law.

"In all cases where in determining the existence or non-existence of contributory negligence it becomes necessary to detect the truth from conflicting evidence, it becomes a question of fact and not of law."

The other question considered essential by able counsel for plaintiff in error is that the verdict is clearly and manifestly against the weight of the evidence. There is a conflict in the evidence, as heretofore stated. The ruling of the Supreme Court

upon assignments of error of this character is that, if there is any credible evidence in the record which sustains the verdict, a reviewing court cannot set it aside, because, as a matter of law, the credible evidence sustains the verdict, even though there is a bitter conflict, and this notwithstanding the fact that the reviewing court itself might have found differently than the jury upon the facts of the case. A long line of authorities, starting with Judge Ranney, is to the effect that it is only as a matter of law that the verdict and judgment of a lower court can be reversed on the ground that they are clearly and manifestly against the weight of the evidence.

We are therefore of the opinion that there is no foundation in law for this assignment of error.

On the question whether the verdict is excessive there is evidence in the case that the injury to the spine was serious, and there is evidence which opposes it. It is conceded that the plaintiff was in the hospital for about two weeks and confined to his home for some two months. From the X-ray pictures, it is claimed that the alleged injuries to the spine are not injuries to the spine, but to what are known as accessory ribs. There is evidence which conflicts with this claim, and one physician and surgeon goes so far as to state that the back is broken and that the injury is permanent.

On the theory above stated, that a verdict stands as to the weight of the evidence if there is any credible evidence to support it, it becomes our duty to refuse to interfere with the verdict of the jury and the judgment of the court on the ground that the question of fact was submitted to the tribunal below for its determination. Hence we see no prejudicial

error under this assignment of error, and, these being the vital questions argued, and, in our opinion, determinative of the case, we do not consider it necessary to pass specifically upon the other questions, except to say that we find no prejudicial error under any of the assignments.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.