**HARTMAN, Jr., Plaintiff-Appellee, v. HINTON et, Defendants-Appellants.**

Ohio Appeals, Second District, Shelby County.

No. 170.   Decided November 12, 1953.

C. V. Lewis. E. J. Garmhausen, Sidney, for plaintiff-appellee.
H. K. Forsyth, Sidney, for defendants-appellants.

## OPINION

By THE COURT:

This is an action for damages for personal injuries received by Lloyd G. Hartman, the plaintiff-appellee, while a guest passenger in an automobile being operated by one George Wooley.

The record discloses that the accident occurred about 2:00 A. M. on U. S. Route 25, which was under repair but open to traffic with warning signs indicating it was not safe to drive faster than 30 miles an hour; that an automobile approaching from the opposite direction blinded Wooley, causing him to drive off of the paved portion of the highway and strike a road roller owned by the defendants-appellants, Hinton, Bailey and Warrick; that said roller was parked on the unimproved portion of the highway, some testimony indicating that it was seven feet and ten inches from the paved portion, and other witnesses testifying that it was not quite that far; that it was without lights, in violation of §6307-84 GC; that the berm, throughout the entire area of construction, had been worked by heavy road-building machinery and was unfit for vehicular traffic. The plaintiff was asleep at the time and was therefore unable to testify concerning the manner in which the collision occurred. Wooley, the driver of the car, testified as follows concerning the events leading up to the collision:

"Q. And from a point, say, a quarter of a mile north of the accident, will you describe just what happened as you approached the scene of the accident?

"A. Well, I was coming from the north, headed south, and there was a car coming from the south going north, and he had his bright lights on—I flicked down my dims, he didn't dim, so I flicked back to bright and then back to dim again—he didn't dim, and I was blinded and I pulled to the right side of the road, and the front wheel seemed to drop off into something soft and mucky and jerked the steering wheel out of my hands and I plowed into this roller.

"Q. Who, other than yourself, was in the car at the time?

"A. Lloyd Hartman, Jr.

"Q. Where were you sitting?

"A. I was on the left side of the car.

"Q. Where was Hartman?

"A. He was on the right hand side.

"Q. In the front or rear seat?

"A. In the front.

"Q. What was Mr. Hartman doing at the time immediately before the accident?

"A. He was sleeping.

"Q. How long approximately had he been asleep?

"A. He fell asleep just outside of Wapakoneta.

"Q. Did you see any lights on the roller?

"A. No, there wasn't any.

"Q. Did you see the roller at all before you hit it?

"A. No."

On cross-examination, record page 65, the same witness testified:

"Q. Now, when you enter the zone '30 mile—slow,' how fast were you driving?

"A. I would say I might have been doing a little more than thirty.

"Q. You were going between forty—forty-five. and higher?

"A. I didn't look at the speed—I might have been doing thirty-five—I might have been doing forty—I don't know.

"Q. You do know you were driving faster than thirty?

"A. I don't know.

"Q. You say that you were blinded by the lights of an approaching car?

"A. That's right.

"Q. And you used your foot button to warn him to dim?

"A. Yes.

"Q. And in the process you slipped into this soft muck—

"A. I didn't slip—I just pulled over to the edge of the road too far.

"Q. Yes, you pulled off the edge of the road too far and got into that soft ground and landed against the roller?

"A. That's correct.

"Q. You said you didn't see a light?

"A. I said there wasn't no light.

"Q. I say this—if there had been a light on it, the accident would have happened anyway?

"MR. GARMHAUSEN: Object.

"THE COURT: If you actually know, you may answer—if you don't you don't have to answer.

"A. That would be hard to say. That would be a hard question to answer. If it had had lights on it, I would have saw it and possibly I may not have pulled to the right so far.

"Q. I'll ask you if you did not say in this courtroom before 'There could have been a light on it (referring to the road roller) and I could have hit it anyway'?

"A. That's possible—I made that statement.

"Q. Did you make that statement?

"A. I did."

On redirect examination, the same witness, record page 71:

"Q. George, Mr. Forsyth asked you whether you had made this statement 'Well, I was blinded by this car's lights—there could have been a light on it, and I could have hit it anyway.' Now, I'll ask you whether this is not a part of the same answer to the same question, and that the full answer reads as follows: 'Well, I was blinded by this car's lights—there could have been a light on it and I could have hit it anyway. I really don't know whether I could have saw it or not'?

"MR. FORSYTH: Object."

Objection overruled.

"Q. Is that not the whole answer that you gave to that question?

"A. Yes, sir."

A verdict was rendered by the jury in favor of the plaintiff and judgment was duly entered thereon.

The errors assigned relate to the Court's overruling the defendants' motions for a directed verdict at the close of the plaintiff's evidence, and also at the close of all of the evidence, and motion for judgment notwithstanding the verdict and motion for a new trial. It is also urged that the verdict is not sustained by sufficient evidence and is contrary to law. All of these alleged errors are grounded upon the question as to whether or not the negligence of the defendants in failing to have proper lights on the roller was a proximate cause of the injuries sustained by the plaintiff. Ordinarily the issue of causation is for the determination of the jury and it is not for the Court to substitute its reasoning for that of the jury in a field which belongs peculiarly to the latter. **Baldridge v. W. Gas Co., 154 Oh St 453. In Tolliver v. City of Newark, 145 Oh St 517,** at page 526, the Court says:

"Ordinarily the question of proximate cause is a question of fact but where, as here, there is no dispute as to facts that question becomes a question of law."

The law on proximate cause is clearly set forth in the syllabus in **Gedra v. Dallmer Co., 153 Oh St 258,** which reads as follows:

"1. In a negligence action, it is essential for recovery that plaintiff prove by a preponderance of evidence not only that defendant was negligent but also that defendant's negligence was a direct or proximate cause of plaintiff's injury.

"2. In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff but, if the injury complained of might well

have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible.

"3. In such action, if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."

Now, an examination of the record reveals that only one witness testified concerning the cause of the accident, to wit, George Wooley, the driver of the car. His testimony discloses that the approaching auto blinded him, causing him to pull to the right side of the road and to leave the paved portion where he said "the front wheel seemed to drop off into something soft and mucky and jerked the steering wheel out of my hands and I plowed into this roller." When one loses the steering wheel of an automobile all directional control is lost. Therefore, even though the roller had been properly lighted and seen by Wooley, still the result would have been the same. Wooley did not select the place to leave the highway, but this was forced upon him, and it happened to be near the parked roller. We are unable to find any causal connection between the defendants' negligence and the plaintiff's injury, which appears to have been caused by the sole negligence of Wooley in driving at an excessive rate of speed.

It is our conclusion that reasonable minds could not arrive at a conclusion different from ours as to the cause of the accident, and where reasonable minds could not differ on the question of fact or the reasonable inferences to be drawn therefrom, it is the duty of the Court to determine the question as a matter of law. **Patrick v. Western Union Telegraph Co., 86 Oh Ap 365; Evegan, Admr., v. Cincinnati Street Ry. Co., 85 Oh Ap 138.** See also **Glasco v. Mendelman, 143 Oh St 649.**

This is the second time the case has been in this Court. The first time we reversed on error committed in charging the jury on the question of contributory negligence. In our opinion at that time we said the question of proximate cause was a jury question, but it only becomes a jury question upon the issue being properly raised. On this record we find no causal connection between the defendants' negligence and the plaintiff's injuries.

The motion for a directed verdict, as well as the motion for a judgment notwithstanding the verdict, should have been sustained. We will sustain the latter motion and order final judgment rendered for the defendants.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.

## ON APPLICATION FOR REHEARING

No. 170.   Decided December 18, 1953.

### OPINION

By THE COURT:

This is an application for a rehearing in which it is urged that our ruling on the question of proximate cause was not consistent with a former ruling in the same case. This case was remanded and retried upon a completely new record. It was from this we found the evidence was not sufficient to warrant the question submitted to the jury, and pointed out in the opinion the reason the record did not support the same.

The application will be overruled.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.